May it please the Court. Good morning, Your Honors. My name is Ethan Ballow, and this morning I speak for Appellant Damion Sleugh. I'm going to try to reserve two minutes of my time. I ask an initial question. I don't understand what, aside from everything else about this case, your special need for this is the appeal, as I understand it. It's the fact that you need to see this in order to prosecute an appeal. I need to what, Your Honor? See the material in order to prosecute an appeal. Yes. How could it possibly help you on appeal when it was not before the jury? And you keep saying you need it to cross-examine, but the trial's over, and you didn't try to get it before the trial. So what – maybe it would help you at a 2255, but how could it possibly help you on appeal? Well, the one thing I respectfully disagree with, I don't think I've ever said I need it for cross-examination. Yes, that was said many times, but go ahead. It was said by my opponents, Your Honor. That's how they've characterized it. Well, that's not my understanding, but go ahead. Thank you, Your Honor. I'll give you the extreme example. Judge Gonzales-Rogers reviews these subpoena applications and found that they identified specific evidence that would support Shaundell Boyd's defense to felony murder at trial. He made representations through counsel about how that evidence would help him. He got the evidence. He later flipped and testified that he participated in the felony murder. So I don't know what representations were made, but we know Judge Gonzales-Rogers reviewed it. She was aware of it. Then Judge Gonzales-Rogers sat there and watched Shaundell Boyd confess to participating in felony murder. So let's take something I haven't seen and suggest that those accounts are inconsistent, that they're irreconcilable. Why? What makes you believe that there would have been representations in the applications for the 17C subpoenas that were inconsistent with the testimony? Well, my position would be that if you're sealing something to protect a trial defense to felony murder and your subsequent testimony later is I committed felony murder or participated in felony murder, those two things appear to be, at least on their face, potentially, if not necessarily, irreconcilable. They're simply requests for information, and the applications need to explain the need for the information. So what reason do you have to believe that there would be factual statements or other things in those applications that would contradict the testimony that the person was giving after they cooperated? Because an application that says you need to seal this because it reveals my trial defense and you actually don't ultimately have one because you're confessing to felony murder. And maybe that's because what you got from the subpoena has demonstrated that you don't have one. Right. In other words, the lawyer is saying I want this information because this is what I'm being told by a client, for example, and I want to see and I want to get the evidence. And then he gets it and he says, oh, this isn't working. I think I better advise him to plead. Exactly right, Your Honor. So the client tells the lawyer. It's the lawyer's representations. It's the lawyer's representations. Right. And those can be admissible in a variety of matters. But let me go back to exactly what Your Honor just said, if I may. The client tells the lawyer, go get this material. I have a trial defense. Here's my defense. It's an alibi. I wasn't there. The lawyer gets the application. I don't see any of that. He says, my defense is going to be that I have an alibi. Why don't you go see if I have an alibi defense? I mean, what happens in criminal defense, as you know, is lawyers usually try very hard not to find out whether the person was guilty or wasn't guilty. They just try and look at the facts objectively and say, oh, well, maybe somebody knows where you were that night. Who should I go ask? I just don't see it. Well, I think a difference between maybe I should go ask and applying for a 17C subpoena goes back to the Supreme Court's work in Nixon. It requires a very specific showing. It's not an investigation, which is how the magistrate judge couched it. They were doing an investigation. And that's what the subject of Your Honor's question is. 17 subpoenas are by definition not investigatory. They are specific requests for identifiable material information. The Nixon standard is hard to meet. The district judge all the time reject applications for subpoenas for trials, and Judge Berg knows this most closely. Judge Wallace did it long ago, because there isn't that specificity, because the district judge says this is a phishing expedition. But it's material to be used at the trial, material to the defense. Right. That doesn't necessarily mean that the person is making admissions of guilt in these applications or anything. Right. Weren't these for cell phone records? Mostly. And so if you're trying to get cell phone records and you put in the application a statement such as they are suggesting that I had a relationship with a person and that I had often had contacts with them and I want the cell phone records to see what they show on that so that I can use them at trial, and so they get those, why is that inconsistent with later saying, okay, you caught me, I did it? I don't know if it's inconsistent. That's why I would like to read them. And the way I see this, and I go to the Second Circuit's case in Moton, where judges have recognized if, and this is Albuhambra, this is Brooklyer, interests are protected. And when there's a protectable interest, things may be sealed for them. We take no truck with that. I defend plenty of cases in the district court. But after the passage of time, if that protectable interest evaporates, then there's no need for sealing. And so you're asking me challenging questions about what's in those applications. And apparently I can't answer them extraordinarily well because I haven't seen them. Perhaps my colleague, Ms. Leonita, can enlighten us. But our position is now that after Shaundell Boyd has served his sentence of three years, after confessing to felony murder, where a key issue in this trial was whether or not Boyd was with Q at the time of the transaction or Mr. Slew was with Q at the time of the transaction. Mr. Slew says Q's a shooter.  It's a critical issue in this trial. That now, all these years later, the only protectable interest that justified sealing was protecting Shaundell Boyd's trial strategy. And he had no trial strategy. Again, when you give up your trial rights, you give up that protection. And that the passage of time, like Moen, at this point in time, there is nothing to protect Boyd for. And perhaps at the end this may be a lie. Are you still looking at a possible state murder charge? I think that is not a reasonable apprehension of fear under Hoffman, which is a Supreme Court case. Perhaps that's easy for you to say. It absolutely is easy for me to say. But if we look at the objective facts, he received his three-year bid almost four years ago, served it, got released, and the State of California said, boo, they dismissed their case. I also would note that his counsel didn't raise this issue of fear in the magistrate court, didn't raise that notion of fear in the district court, didn't raise that notion of fear in an emergency motion to intervene in this court. Then he was relying on the attorney-client privilege to secure all that relief. And it was only when we filed our brief where, respectfully and humbly I suggest, we dispatched that argument, they shifted and now identified we have a new fear. I don't think it's worthy of belief. I have about two minutes left. I'll reserve my time if I may, Your Honor, or answer any questions you have. Simply because this is a point of, I always tell lawyers, I said, you said you want to use it to cross-examine him, and you said you didn't, so I've just spent several minutes trying to figure out why I said that. And it says right here that counsel's statement made on Boyd's behalf are admissions and may have been used to impeach Boyd. So, I mean, it's not very material, except that it was a distraction to me to say  Thank you. Thank you, Your Honor. Could I slip one question in? As you like, Your Honor. And you can think about it and talk about it when you come back. I was impressed with the First Circuit case of Kravitz. We haven't really done much with this particular issue. One alternative would be that we would adopt the position of the First Circuit. And if we did do so, how would that change your argument and how would you argue if we adopt the Kravitz? So you might come back a little later and tell us about that. Thank you, Your Honor. Thank you. So are you splitting time or not? We are splitting time. I will take about two minutes. May it please the Court, my name is Mary Jean Chan and I represent the United States in this appeal. I will try to make three quick points in about two minutes and cede the rest of my time to the real party in interest, the counsel for Shondell Boyd. First, the government took a position in this case only because defendant actually opposed the motion to intervene by Shondell Boyd. But we've also come to the conclusion that the district court's order is defensible and it is correct. And partly it's because we are convinced by the analysis in the First Circuit case, the United States v. Kravitz. The second point I wanted to make goes to the point that you were discussing during the previous argument, which is that is there any special need? And there is no special need that's been demonstrated. I want to clarify that Boyd did not plead guilty to felony murder. If you look at excerpts of record, page 21, which is his plea agreement and the cross-reference that to the indictment on page 35, he didn't. And what he testified at trial was that he was not even in the car when Muzak was shot. He was not in the car. Slew recognized that. Slew testified at trial that he was in the car. He just claimed that he wasn't the one who shot him. So that, I think, is something that needs to be clarified. But in any case, whether he has a need or not or has established a need or not is simply not relevant when we're talking about what's at issue in the applications, which is quintessentially work product, work product that shows the mental impressions of the defense attorney exploring and investigating possible defenses for Boyd when he was thinking about potentially going to trial. That doesn't expire. Kagan, it's a strange kind of work product, though, because it is provided to the district court. It is. Is there any law holding that that's worth a product? It is in the sense that Rule 17 specifically makes an exception to keep that privileged and private with the ex parte motion. But also this Court's law on implied waivers, I think, is very instructive. The only way that these materials or these mental impressions were waived with respect to the privilege was for the purposes of obtaining a subpoena. So to the extent that they're waived, it's an implied waiver, and that waiver is limited, just as when a defendant makes, for example, an ineffective assistance of counsel claim. That impliedly waives their attorney-client privilege, but not for all purposes, not for all time, not for a co-defendant to use in some other litigation or to conviction. That's only for the purposes of adjudicating fairly that particular claim. So here, the implied waiver is only as to whether the district court, the magistrate judge, would grant the subpoena. So that doesn't expire. There's no passage of time sort of expiration on this. Do you agree, counsel, though? You mentioned the Kravitz case. Do you agree that if a special need is shown, that disclosure might be appropriate? It might be. What kind of special need do you believe would need to be shown? I think I'm not really sure how to articulate what sort of special need. In fact, I think it is a pretty ironclad privilege, maybe some sort of bad faith or actual lie or something on the part of the applicant. But in this case, as the magistrate pointed out, the applicant is Boyd's attorney, not Boyd. Boyd is the one who testified. It would be very far-fetched to have him be impeached in a material way at trial based upon the explorations of an investigating attorney who has to do that in part so that Boyd can make a fully informed decision as to whether even to plead guilty and cooperate with the government. Isn't it almost impossible to make a showing of special need when you don't know what's in the applications? How can you articulate what that need is if you don't know what the applications say? I think that's right, Your Honor. But, for example, it would be impossible for him to make a special need application to get access to the counsel's defense files, even though maybe there's some really great material for him there. That's off limits for him because it is work product. It is something that should contain attorney-client privilege. But I want to make sure that my colleague at the table gets up and is able to talk. Thank you very much. So thank you, and we ask for information. May it please the Court. My name is Ellen Leonita, and I represent the intervener, Shondell Boyd, the real party in interest. The issue in this case is not about appellants seeking access to Mr. Boyd's statements. The magistrate and the district court specifically found that there were no statements by Mr. Boyd in the sealed materials, nor are they seeking the subpoenas themselves, which they have. The appellant is also not seeking the subpoena returns, which he's never asked for. The only thing that appellant is seeking are my theories as trial counsel about the relevance, admissibility, and specificity of those items, which is textbook work product. And there is nothing in the First Amendment, the common law, or the due process clause that entitles him to that. The Kravitz decision, the only circuit court case to address this issue, after the First Circuit decided that correctly. The affidavits submitted in support of Rule 17 subpoenas are not materials that are historically open to the public. Kagan. I mean, it strikes me that doctrinally, the claim here for First Amendment interest is exceedingly weak, since he's saying specifically that he's not going to show it to anybody and he only wants it for this particular use. But suppose you had, you know, a newspaper come in 10 years after a conviction and want to see these documents. Would you have the same position? Yes, Your Honor. I believe that Kravitz correctly found that these are not documents that Discovery process is not something that's historically been accessible to the public, and letting the public have access to criminal discovery is not something that would improve the functioning of the judicial system. There just is no public right of access. There's no benefit to the criminal justice system from the public being able to access these types of materials. This isn't like a trial or a hearing or a sentencing. Would your position change at all if these were being sought in connection with a habeas case for ineffective assistance of counsel? No, Your Honor. In that case, I think that there might be ‑‑ it might be easier to imagine how appellant could establish a special need. I believe not in this case, but in a habeas case, at least conceivably, there would be some use for these documents. And moreover, the work product or attorney-client privilege gives way sometimes in those instances. Sometimes it does. I think that is a harder hurdle because attorney-client and work product privileges outlast the case. They must, by definition, or every time a case ended, the other party would subpoena my file. Who holds the right here to disclose this information? Suppose that the petitioner in the habeas case wanted to unseal these applications and the attorney said, no, that's work product. Would the petitioner be able to unseal them then? No, Your Honor. I think that Kravitz, the reasoning of Kravitz would still control. These documents are still not subject to public disclosure under the First Amendment or under the common law. Mr. Boyd has a right to maintain his ex parte under seal applications under seal. To rule otherwise would mean that every time a criminal defendant applied for a rule 17C subpoena, they would have to make a choice about giving up a potential theory of defense versus obtaining documents that might support it. As anybody who practices law knows, defense theories shift, they change, they evolve. There could be multiple legitimate defenses to the same crime. And if somebody, if a criminal defense attorney is put in the position of having to decide before applying for any rule 17C subpoena which exact defense they're going to pursue, then they're also forced to give up potential other valid defenses which might require articulating other theories of relevance and obtaining other exculpatory documents. In this case, the magistrate did not abuse, the magistrate and the district court did not abuse their discretion in finding that there was no special need. There cannot be a special need primarily because on appeal, Mr. Boyd cannot be cross-examined. The statements that were contained in the subpoena applications were my statements, they were not his. And they were my statements about work product, about relevance, about specificity, about the admissibility of these records. Just as a hypothetical, if you had, what if one of these 17C subpoenas were applied for, for let's say video surveillance records at a 7-Eleven, and the reason they were applied for is because the client had told the attorney that the client wasn't there, and that was put into the application. The attorney essentially said, because you're saying it may not be the attorney's statement or the client's statement, but in this case, it was the client's statement. My client told me that he was not there, I want to prove this, therefore I want the video surveillance. And then it turns out that the video surveillance shows that he was there, and later we have a situation like this, where another defendant who was convicted after that defendant testified about his role wants to cross-examine him by saying he told his lawyer that he wasn't there. May I respond? Of course. Please. Work product would still apply to protect that statement in that case, and the reason is that the fact that Mr. Boyd ultimately pled guilty and accepted responsibility doesn't turn him or myself into an agent for the government. Moreover, I suppose in that instance you'd have attorney-client privilege, i.e., my client told me this. Yes, Your Honor. And we — Mr. Boyd never has the obligation of providing exculpatory evidence to his co-defendant or any other adverse party. Rule 16 doesn't apply to him as regards to Mr. Slew, nor does Brady or Giglio. Okay. Thank you very much. Sir. Thank you, Your Honor. I'll try to make four points. I'll begin with Judge Wallace's question. Thank you, Your Honor. Let's assume you adopt a First Amendment analysis. And I want to get to the Fifth Amendment because I — while Judge Berzon may have I think the Fifth Amendment under Moten and Abuhamra would get us home. With respect to Kravitz, the special need that we would articulate is the one that Judge Berg's questions were just getting at. If the application suggests that the client told the lawyer they had a defense that's inconsistent with their ultimate testimony, that's information that should have been disclosed at trial. Whether that becomes a claim on direct appeal is yet to be determined. What we hope to do is see them. But in the example, the special need is if Judge Gonzales-Rogers was aware of facts, representations made on Boyd's behalf to secure court process, and those representations are then inconsistent with his trial testimony where he secured my client received a life sentence, that that's a special need to investigate. And that interest would be balanced against Boyd's interests, which will let me pivot to my second point. One, I disagree that the work product privilege survives to this day. I'd ask the court to look at the Chevron case from the Third Circuit that Boyd has cited, as well as it cites the Parker v. United States, which stands for the unremarkable proposition that privileges are followed only to the extent they serve the interest they're intended to. And work product is meant to shield thoughts and privileges during the time of litigation. And that and the Moten sort of idea that time can change ceiling in ten years is different than during trial. At this time, one, putting aside that we believe work product was waived by the voluntary submission, at this time the work product privilege of Ellen Leonida is less important and a lesser interest than Mr. Slew's ability to understand all of Boyd's representations relevant to the actual allegation of this crime. And I would go back to Justice Jackson and Ann Lee in dissent. This court cited with approval in Bernal-Obiso. When it comes to addressing cooperators, they have a lot of incentive to please the government. And in this case, I agree that he didn't plead to felony murder, but he confessed to felony murder on the stand. And he got three years for helping the United States. And are there reasons that we should have known, that Mr. Slew should have known at trial, that would make us be concerned that was that a truthful account? And if he had said prior things, and his lawyer represented he had said prior things, like I wasn't there with an alibi, that would be the type of fact a district judge should be alert to and say, whoa, Mr. Boyd just testified that he was at the scene, but six months ago he gave me 15 applications saying he had an alibi. How can this happen? We have to address it. I think you've finished your discussion of the case I asked you to talk about. Thank you. Thank you, Your Honor. Anything else, Your Honor, you had a question? Well, all I was going to say was that the subpoenas were all, as far as I could tell, for cell phone records. Is that right? Mostly. There was a couple of video from Walmart. Other subpoenas were issued. But the vast majority were cell phone records, both for my client's phone, for Slim's phone, for Boyd's own phone, for phones I was unable to identify from the applications. I would say the majority were cell phone records, both relating to content of communications and what appeared to be CLSI, cell site location data. But, again, I'm not really clear on that. But it was of that nature the majority of the interest, which led me to believe it was possibly an alibi defense because that would be the type of information you would seek to try to sustain an alibi defense. I see. Okay. The last point I just want to make is, and I think it's important, and Your Honors can do it. We've danced around what are in the subpoenas. You have them. And what the magistrate judge didn't say and what the district judge didn't say is we looked at these applications. We looked at Boyd's testimony. It's 100 percent consistent. You're phishing, Mr. Ballot. They didn't say that, which I found a little bit odd because that's the quickest way to end this. Your Honors have access to these. Look at them. I urge you to look at them. But if you can't say, if Your Honors can't say, and you have Boyd's testimony, if Your Honors can't say, you know what? These things are lockstep. You didn't miss anything. District Judge Gonzalez was fantastic. Then I'm probably out of this. But if we can't say that, then shouldn't Mr. Slew, who's doing Life Plus 10, have a chance to try to marshal from those applications what he can?   My question is this. What you are mentioning is an argument on appeal that the district judge, having issued these subpoenas, is bound to the knowledge of what the lawyer represented to monitor what the co-defendant testifies to on a sort of Brady-like approach, but it isn't the government. I'm saying that if the district judge is aware of facts that constitute a distortion of the fact-finding process Well, the facts would be, again, not the client's facts. But go ahead. Well, the lawyer got them. I don't know what's in the application. My sense is on information and belief coming from the client. But if a district judge is aware of facts in the record that suggest that a cooperator's testimony to which they've been directed to have heightened scrutiny can constitute a distortion of the fact-finding process, the district court has a responsibility to take action to ensure that no such distortion takes place. All right. Thank you, Your Honor. Thank you very much. An interesting case and good argument. So thank you. The United States and Boyd v. Slew is submitted. We'll go to total recall technologies.
judges: Wallace, Berzon, Berg